error to hold as matter of law that the article by necessary inference did so charge.

Judgment and order reversed, and a new trial granted, with costs to appellant to abide the event.

---

### SCHWARTZ v. ONWARD CONST. CO.

(Supreme Court, Appellate Division, First Department. March 5, 1909.)

1. MASTER AND SERVANT (§ 301*)—SERVANT EMPLOYED BY THIRD PERSONS—INJURY.

    ·A hotel company owed a contractor's employé the duty to use reasonable care to avoid injuring him while he was at work in an elevator shaft.

    [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1213; Dec. Dig. § 301.*]

2. MASTER AND SERVANT (§ 330*) — INJURY TO THIRD PERSON — NEGLIGENCE — EVIDENCE—SUFFICIENCY.

    Evidence *held* to warrant a finding that injury to a contractor's employé, caused by a descending elevator while at work in defendant's elevator shaft, was caused by the elevator operator's negligence.

    [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1272; Dec. Dig. § 330.*]

3. MASTER AND SERVANT (§ 332*) — INJURY TO THIRD PERSON — CONTRIBUTORY NEGLIGENCE—JURY QUESTION.

    Whether a contractor's employé injured by a descending elevator while at work in defendant's elevator shaft, was guilty of contributory negligence, or assumed the risk, *held*, under the evidence, a jury question.

    [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1274; Dec. Dig. § 332.*]

4. MASTER AND SERVANT (§ 304*)—INJURY TO THIRD PERSON—EMPLOYER'S LIABILITY.

    A hotel company is liable for injury to a contractor's employé while at work in an elevator shaft, caused by negligence of an elevator operator.

    [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1226; Dec. Dig. § 304.*]

5. TRIAL (§ 143*)—PROVINCE OF JURY—CONFLICTING TESTIMONY.

    A question of fact is for the jury when the evidence is conflicting.

    [Ed. Note.—For other cases, see Trial, Cent. Dig. §. 342; Dec. Dig. § 143.*]

Appeal from Trial Term, New York County.

Action by Charles Schwartz against the Onward Construction Company. From a judgment dismissing the complaint, plaintiff appeals. Reversed, and new trial ordered.

Argued before INGRAHAM, McLAUGHLIN, HOUGHTON, CLARKE, and SCOTT, JJ.

Jonathan Deyo, for appellant.
Frank V. Johnson, for respondent.

INGRAHAM, J. The action was brought to recover for the injuries sustained by the plaintiff while engaged in working in an elevator shaft in a building occupied by the defendant. The complaint alleges that while the plaintiff was so engaged the defendant, by its serv-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ants, agents, or employés, was running an elevator in said shaft in which the plaintiff was at work, and in so doing the defendant, by its servants, agents, or employés, ran the same in such a careless, negligent, and reckless manner as to bring the same down upon the plaintiff, inflicting upon him severe injuries, which resulted. in the amputation of one of his legs. The answer admits that these elevators were being operated by the defendant in the building described in the complaint, and that the defendant was engaged in doing the work in the elevator shaft in this building.

It appeared upon the trial that the plaintiff had been working at this building four or five months prior to the accident, which was on the 25th day of October, 1902; that his employers were contractors, constructing the iron work in the elevator shafts; that on the morning of the 25th of October, 1902, prior to going down on the basement floor of the premises, plaintiff had been at work on the fourth floor, and at about 10 o'clock he finished that work; that he then went to work in the basement; that before going to work in the basement he went upstairs and told the two men who ran the elevators that he was going to put a scaffold underneath and was going to work under them, that he would be done in a short time, and would let them know when he was done, and they promised the plaintiff that they would not come down; that one Jones was running the elevator in the center shaft, and that he told Jones on the outside, in front of the elevator on the first floor, and Jones said, "I will not come down; I will be careful;" that after that conversation the plaintiff went down and commenced to work; that while at work in the central shaft he saw the elevator coming down, and hollowed, "Look out! do not come down;" that, notwithstanding, the elevator came down and struck him; that, although the building was not finished, the elevator was running; that this center shaft was a passenger elevator, used in the defendant's business. Jones, the elevator man, was hired by Webb, the manager and steward of the defendant, who was operating the hotel. Webb was called for the plaintiff, and testified that he had employed Jones upon this elevator, and that he was working under such employment at the time of the accident. The hotel was opened for guests in September or October, 1902. The man that was working with the plaintiff testified that the plaintiff was inside of the center shaft; that the elevator came down about five feet below the first floor and stopped; that the men hollowed to stop it, but, instead of going up, it came down all in a second, and caught and crushed the plaintiff.

When the plaintiff rested, Jones was called for the defendant. He testified that he had been instructed by Webb not to run an elevator where there was a man working in the shaft, or any part of it; that on the morning of the accident the plaintiff spoke to the witness, and said that he was going down to do some work in the cellar, and for the witness not to come down; that the witness said he would not at that time, but subsequently he thought about his orders, and went down to the basement and told the plaintiff he had been instructed not to run an elevator when any one was working in the shaft; that the plaintiff said, "All right, go ahead and run the elevator," and that he (plaintiff) would take the risk or chance; that subsequently the witness

continued running the elevator up and down, and did not afterwards see the plaintiff; that at the time of the accident he had taken some passengers to the sixteenth floor, and took a passenger from the sixteenth to the third floor; that he let her off at the third floor, and continued his trip to the first floor; that the elevator did not stop at the main office floor, but went 15 or 18 inches below; that he heard the plaintiff hollow; that the elevator did not go any further down in the shaft, but when he heard the shout he ran the elevator to the second floor, left it there, and went down to see what had happened. Webb was recalled, and said that he knew that the men were working in the elevator shaft that morning; but he could not say that he gave Jones any instructions about running the elevator then. There was further evidence that the plaintiff had been warned not to work in the elevator shaft while the elevator was running, and was ordered on the morning in question not to work in that shaft. There was considerable evidence for the defendant that the elevator did not strike the plaintiff at all, but that he fell off the platform or scaffold.

In rebuttal the plaintiff denied that he was ordered not to work in the elevator shaft when the elevator was running, and denied that he was ordered not to work in the shaft on the morning of the accident, and denied the statement to Jones in relation to his taking the risk. After the testimony was all in the defendant moved to dismiss the complaint, which was denied; whereupon counsel summed up and the court charged the jury. After the jury had retired, they returned to the courtroom, and the court dismissed the complaint.

The plaintiff was at work in this elevator shaft under a contract made between the defendant and the plaintiff's employers. At the time defendant was operating elevators controlled by its employés, and there can be no question, I think, but that the defendant was bound to exercise, under those circumstances, reasonable care to prevent an accident. There is certainly evidence to justify a finding of the jury that the accident was caused by the lack of care of defendant's employé in charge of the elevator, and the question as to whether the plaintiff was guilty of contributory negligence, or assumed the risk of the accident, was clearly one for the jury. We have, therefore, the question as to whether the defendant was responsible for the negligence of its employé, the elevator boy. The defendant is a corporation, and can only act through its employés and officers engaged in the operation of its hotel; and as an appliance for the use of the hotel, it maintained this passenger elevator in this shaft in which the accident occurred. There could be no doubt, I think, that, if a person using the elevator had been injured by the negligence of the elevator operator, the defendant would be liable; and I can see no reason why the defendant was not under the same duty to the plaintiff as it was to any other person lawfully on the premises. McDermott v. Straus, 123 App. Div. 303, 108 N. Y. Supp. 5.

The plaintiff not being in the employ of the defendant, there is no question of fellow workmen involved; the fact being that the plaintiff, lawfully at work upon the premises, was injured under circumstances which justified a finding of negligence against the employé of the defendant in charge of the elevator, and for whose negligence,

when committed in the course of his employment and in the performance of the duties of his master, his master is liable.   The question as to whether or not this plaintiff was ordered not to work in the shaft when an elevator was running having been expressly denied by the plaintiff, was a question for the jury.

On the whole case, I think there was a question for the jury, and that the judgment should therefore be reversed, and a new trial ordered, with costs to plaintiff to abide the event.   All concur.